1
2
3
4
5
6
7
8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL WITKIN,                             No.  2:22-cv-1211 WBS CSK P

12                    Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14   PITTSLEY,

15                    Defendant.

16

17   I.     INTRODUCTION

18          Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this action

19   brought under 42 U.S.C. § 1983.  The parties' cross motions for summary judgment are fully

20   briefed and before the Court.  As discussed below, the Court recommends that plaintiff's motion

21   for summary judgment be denied, and defendant's motion for summary judgment be denied.

22   II.    BACKGROUND

23          Plaintiff paroled from the custody of the California Department of Corrections and

24   Rehabilitation ("CDCR") on July 6, 2022.  Plaintiff filed this action on July 11, 2022.  (ECF No.

25   1.)  On April 10, 2024, plaintiff filed a motion for summary judgment.  (ECF No. 22.)  Defendant

26   was granted an extension of time to oppose the motion pending resolution of other motions.

27   (ECF No. 20.)

28          On January 13, 2025, the Court ordered defendant to file an opposition to plaintiff's

                                                    1

1  motion for summary judgment and file defendant's cross motion for summary judgment on or

2  before February 11, 2025.  (ECF No. 35.)

3     On February 10, 2025, defendant filed a cross motion for summary judgment.  (ECF No.

4  36.)  That same day, defendant filed an opposition to plaintiff's motion for summary judgment.

5  (ECF No. 37.)  On February 19, 2025, plaintiff filed a reply to defendant's opposition to

6  plaintiff's motion for summary judgment, and to defendant's response to plaintiff's statement of

7  undisputed facts.  (ECF Nos. 38, 39.)

8     On March 6, 2025, plaintiff filed an opposition to defendant's cross motion for summary

9  judgment.  (ECF No. 40.)  On March 18, 2025, defendant filed a reply.  (ECF No. 41.)

10 III.   PLAINTIFF'S COMPLAINT

11    In his verified complaint, plaintiff alleges as follows.  (ECF No. 1.)  On November 13,

12 2021, while plaintiff was housed at California Medical Facility ("CMF"), defendant M. Pittsley

13 presided over a disciplinary hearing in which defendant found plaintiff guilty of disobeying an

14 order.  (ECF No. 1 at 2.)  Defendant intentionally imposed a 60 day loss of exercise yard as one

15 of the punishments, despite knowing that (a) exercise yard is the only exercise opportunity

16 available at CMF, and (b) California law requires a minimum of ten hours per week of outdoor

17 exercise for inmates subject to discipline who do not require security housing.  (Id.)  Defendant

18 "was presumed to know as a matter of law the excessive risk posed to plaintiff's health as a result

19 of being denied the minimum exercise prescribed by law."  (Id.)  Defendant's intentional

20 response to this known risk was unreasonable because defendant knew that federal law prohibits

21 using the denial of exercise as a sanction for nonviolent misconduct.  (Id.)  Plaintiff was not

22 permitted to resume outdoor exercise until January 13, 2022.  (Id.)

23    As a result, plaintiff suffered physical and mental injuries, including neck and back pain,

24 stiffness, soreness, energy loss, shortness of breath, headaches, lethargy, loss of range of motion,

25 muscle atrophy, and joint pain.  (Id.)

26    Plaintiff seeks money damages.

27 IV.   LEGAL STANDARDS FOR MOTION FOR SUMMARY JUDGMENT

28    Summary judgment is appropriate when it is demonstrated that the standard set forth in

Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

3

1    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

2    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

3    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

4    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

5    (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3

6    (9th Cir. 2002).

7        In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10   trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963

13   amendments).

14       In resolving a summary judgment motion, the court examines the pleadings, depositions,

15   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

16   Civ. P. 56(c).  A verified complaint may be considered as evidence at the summary judgment

17   stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity."

18   Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  The evidence of the

19   opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that

20   may be drawn from the facts placed before the court must be drawn in favor of the opposing

21   party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and

22   it is the opposing party's obligation to produce a factual predicate from which the inference may

23   be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

24   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

25   party "must do more than simply show that there is some metaphysical doubt as to the material

26   facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

27   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation

28   omitted).

4

On September 15, 2023, the parties were notified that if defendant sought summary judgment, defendant must contemporaneously serve a separate notice with the motion, and provide the separate notice required under Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).  (ECF No. 19 at 6, 9.)  By notice filed on February 10, 2025, along with his motion for summary judgment, defendant provided plaintiff with the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 36-10 (citing Rand, 154 F.3d at 962-63).)

V.      EIGHTH AMENDMENT STANDARDS

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane method of punishment but also from inhumane methods of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective."  Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 927 (9th Cir. 2021) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)).  Under the objective requirement, the inmate must demonstrate "conditions posing a substantial risk of serious harm" that present "an excessive risk to [his] health or safety."  Norbert, 10 F.4th at 928 (quoting Farmer, 511 U.S. at 834).  "The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference."  Id. (quoting Allen, 48 F.3d at 1087).

The Ninth Circuit has recognized that "exercise is 'one of the basic human necessities protected by the Eighth Amendment.'"  Norbert, 10 F.4th at 928-29 (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)).  In determining whether a deprivation of outdoor exercise is sufficiently serious, the court must consider the circumstances, nature, and duration of the deprivation.  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).

"[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes.  Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993)).  But the right to outdoor exercise is not absolute or indefeasible.  Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).

1   Prison officials may restrict outdoor exercise on the basis of weather, unusual circumstances, or

2   disciplinary needs.  See Spain, 600 F.2d at 199.  However, "[t]he cost or inconvenience of

3   providing adequate [exercise] facilities is not a defense to the imposition of a cruel punishment."

4   Id. at 200.  In Norbert, the Ninth Circuit emphasized it "did not . . . suggest that the Eighth or

5   Fourteenth Amendments categorically required exercise to take place outdoors regardless of any

6   indoor recreation options."  Norbert, 10 F.4th at 931.  Rather, the court held that "the Constitution

7   requires" the provision of "outdoor recreation opportunities, or otherwise meaningful recreation,

8   to prison inmates."  Id. at 932 (quoting Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018) ("we

9   have confirmed, time and time again, that the Constitution requires jail officials to provide

10  outdoor recreation opportunities, or otherwise meaningful recreation, to prison inmates.")).  Thus,

11  indoor recreational opportunities may satisfy constitutional standards.  Id. at 929-30.  For

12  example, access to a dayroom designed for exercise may be adequate recreation.  Id. at 931.

13  VI.    THE PARTIES' EVIDENCE

14         As noted above, plaintiff and defendant both filed motions for summary judgment.  (ECF

15  Nos. 22, 37.)  Although these motions were not filed simultaneously, the briefing was extended

16  due to the pendency of other motions.  Therefore, the Court addresses both motions for summary

17  judgment together, and in ruling on the merits of both motions, considers the evidence submitted

18  in support of, and in opposition to, both motions.  See Fair Housing Council of Riverside Cnty.,

19  Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions

20  for summary judgment on the same claim are before the court, the court must consider the

21  appropriate evidentiary material identified and submitted in support of both motions, and in

22  opposition to both motions, before ruling on each of them."); see also Johnson v. Poway Unified

23  School District, 658 F.3d 954, 960 (9th Cir. 2011) (court must consider each party's evidence in

24  resolving cross-motions for summary judgment)).

25         A.  Plaintiff's Evidence

26         Plaintiff submitted the following evidence:

27         Verified complaint (ECF No. 1);

28         Plaintiff's declaration in support of his motion for summary judgment (ECF No. 22 at 12-

6

14)

Pages 1, 13 and 14 from November 13, 2021 Disciplinary Hearing Results (Id. at 15-18);

Defendant's responses to request for production Nos. 1 & 2 (Id. at 20);

Institutional Operations Plan for privilege group C and housing program (Id. at 22);

Plaintiff's declaration in opposition to defendant's motion for summary judgment (ECF No. 40-1); and

Partial copy of the CMF Inmate Orientation Handbook, including the title page, table of contents, and page 13, addressing visitors' responsibility and conduct (Id. at 4-8).

B. Defendant's Evidence

Defendant submitted the following evidence:

Plaintiff's medical record and physical therapy records (ECF No. 37-2);

Defendant's declaration in support of motion for summary judgment (ECF No. 36-2);

Rules Violation Report Log No. 7129160 charging plaintiff with disobeying an order (ECF No. 36-3);

Disciplinary Hearing Results (RVR Log No. 7129160 (ECF No. 36-4);

Classification Committee Chrono (Nov. 18, 2021) (ECF No. 36-5 1-7);

Classification Committee Chrono (March 18, 2022) (Id. at 8-13);

Plaintiff's Work Assignment (Main Kitchen Worker) (ECF No. 36-6 at 2-3);

Rules Violation Report Log No. 7149904 – charging plaintiff with failure to report to work (Id. at 4); and

Plaintiff's Assignment (Education) (9/29/2021) (ECF No. 36-7).

VII. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff contends that he is entitled to judgment as a matter of law because defendant intentionally denied plaintiff exercise opportunities for 60 consecutive days despite knowing that the Eighth Amendment and CDCR policy prohibited deprivation of exercise for 60 days. (ECF No. 22 at 2.) It is undisputed that plaintiff was deprived of all yard recreation and canteen privileges from November 13, 2021, to January 13, 2022, a period of 60 days. But contrary to plaintiff's position, not "all deprivations of outdoor exercise are per se unconstitutional." See

1  Norbert, 10 F.4th at 929; Spain, 600 F.2d at 199 (declining to find whether deprivation of outdoor

2  exercise is per se unconstitutional).[1]  There is no bright line for determining if and when inmates

3  are entitled to outdoor exercise time, and instead "the constitutionality of conditions for inmate

4  exercise must be evaluated based on the full extent of the available recreational opportunities."

5  Id. at 930, 933.  Indeed, the court held that there is no per se requirement to provide outdoor

6  exercise as opposed to other forms of recreation, nor is there an established constitutional

7  minimum number of hours per week required for recreation.  Id. at 929-30.  Aside from his

8  declaration that he was deprived of all exercise opportunities for 60 days, plaintiff provided no

9  evidence that he was confined to his cell for most of each day, or that he had no access to the

10  dayroom or the education program.  (ECF Nos. 22, 40-1.)  Indeed, in his second declaration,

11  plaintiff states he "had either very limited, or no access at all to dayroom or telephones because . .

12  . those amenities were outside of the cell [he] was locked inside of throughout the 60 day period."

13  (ECF No. 40-1 at 2.)  However, his claim that such amenities were outside his cell is unhelpful

14  because telephones are generally not provided in prison cells, and dayrooms are always outside

15  the prison cell.  Plaintiff's claim that defendant was deliberately indifferent because he knew he

16  was acting in violation of the Eighth Amendment and California law is insufficient, standing

17  alone, to show defendant acted with a culpable state of mind.  Thus, plaintiff is not entitled to

18

19  [1]  In Spain, the prisoner plaintiffs were supposed to get to exercise in a corridor in front of eight
    or nine cells for one hour a day, five days a week, but the prisoners were actually given less time

20  for exercise.  Spain, 600 F.2d at 199.  The Ninth Circuit stated it need not consider whether the
    deprivation of outdoor exercise is a per se violation of the Eighth Amendment, but a combination

21  of various factors made the court conclude that outdoor exercise was necessary in that case:  the
    prisoners were in continuous segregation and spent almost 24 hours a day in their cells with

22  "meager out of cell movement" and exercise in a corridor; the inmates had minimal contact with
    others; they lived in an atmosphere of fear and apprehension; and they had no programs or

23  training or rehabilitation.  Id.  The Ninth Circuit affirmed the district court's decision to order that
    prisoners confined to this space for more than four years be given outdoor exercise for one hour a

24  day, five days a week, unless "inclement weather, unusual circumstances, or disciplinary needs
    made that impossible."  Id.  Later, in Toussaint, where many of the prisoners were confined to

25  their cells for 23.5 hours a day, and 1000 out of 2000 prisoners in the class were in administrative
    segregation for over a year, the court found the conditions were similar to Spain.  Toussaint v.

26  Yockey, 722 F.3d 1490, 1492-93 (9th Cir. 1984).  The Ninth Circuit affirmed the district court's

27  determination that the prisoners would probably succeed on the merits of their denial of outdoor
    exercise claim.  Id. at 1493.

28

1    summary judgment as a matter of law based solely on the deprivation of outdoor exercise for 60

2    days because defendant intentionally imposed the punishment despite knowing it violated the

3    Eighth Amendment and California law.  See Norbert, 10 F.4th at 929-30.  The Court recommends

4    that plaintiff's motion for summary judgment be denied.

5    VIII.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

6         A.  Objective Element:  Seriousness of the Deprivation

7              1.  Length of the Deprivation

8         As noted above, it is undisputed that plaintiff was deprived of yard recreation privileges

9    for 60 consecutive days as a result of defendant imposing the deprivation based on an RVR issued

10   to plaintiff for disobeying an officer's order to follow COVID-19 protection policies during

11   visiting hours.[2]  (ECF No. 36-1 at 5.)

12        The Ninth Circuit has found objectively serious deprivations of human necessities where

13   prisoners were deprived of outdoor exercise for periods of as little as six weeks.  Allen, 48 F.3d at

14   1086-88 (six weeks of confinement with only 45 minutes of exercise per week objectively

15   serious); Lopez v. Smith, 203 F.3d 1122. 1132-33 (9th Cir. 2000) (six and a half weeks with no

16   access to outdoor exercise objectively serious); see also Thomas, 611 F.3d at 1151 (recognizing

17   that under circuit law, deprivations of more than six weeks are objectively serious).  Indeed, in

18   Lopez, the en banc court reversed a panel decision that found a six and a half week denial of yard

19   was not objectively serious.  Lopez, 203 F.3d at 1133 n.15.  As the Ninth Circuit explained:

> For over thirty years, we have emphasized that "some form of regular
> outdoor exercise is extremely important to the psychological and
> physical well-being of the inmates." Spain, 600 F.2d at 199.
> California strictly regulates this "regular outdoor exercise,"
> ordinarily requiring prisons to provide inmates held in the general
> population with at least three hours of exercise per week and inmates
> held in segregation with at least one hour of exercise per day.  Cal.
> Code Regs. tit. 15, §§ 1065, 3343(h) (2006).  The same regulations
> prohibit disciplining inmates by depriving them of outdoor exercise
> for more than ten days, absent extreme circumstances.  Id. § 3322(c).

---

[2]  In his opposition to defendant's motion, plaintiff disputes the underlying facts supporting the
RVR, but the validity of the triggering RVR is not at issue here.  Rather, the sole issue is whether
the 60 day deprivation of yard recreation privileges violated the Eighth Amendment.

1    Thomas, 611 F.3d at 1152.  Thus, deprivations exceeding the deprivation in Allen are considered

2    "long-term" rather than temporary.  Lopez, 203 F.3d at 1133 n.15 (citing Allen, 48 F.3d at 1087-

3    88).  A long-term deprivation is considered substantial regardless of its medical effects.  Lopez,

4    203 F.3d at 1133 n.15 ("The clear implication of May is that temporary denials of outdoor

5    exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term

6    deprivations are substantial regardless of effects.") (citing May, 109 F.3d at 565)); see also

7    Tarabochia v. Clatsop Cnty. Oregon, 646 F. App'x 535, 537 (9th Cir. 2016) (determining the

8    objective element of an Eighth Amendment deprivation of exercise claim "turns on the conditions

9    of confinement and length of the deprivation," finding deprivation of outdoor exercise longer than

10   that in Allen, [a six-week period in which the inmate exercised outdoors for 45 minutes per

11   week], is "long-term" and no adverse medical effects are needed); Norwood v. Woodford, 583 F.

12   Supp. 2d 1200, 1204 (S.D. Cal. 2008) (in denying motion to dismiss, court found that a denial of

13   all outdoor exercise for 39 days during prison lockdown meets the objective prong of Eighth

14   Amendment claim, and material disputes of fact also precluded qualified immunity).

15       In light of these authorities, the Court finds that plaintiff suffered a long-term deprivation

16   of outside exercise and therefore is not required to demonstrate adverse medical effects from the

17   deprivation.  That said, in order to survive summary judgment on the objective element, plaintiff

18   must demonstrate that there is a genuine dispute of material fact as to whether the conditions of

19   confinement during such long-term deprivation were sufficiently serious to rise to the level of an

20   Eighth Amendment violation.  See Norbert, 10 F.4th at 929-30.

21           *2. Conditions of Confinement*

22       It is undisputed that defendant did not order plaintiff confined to quarters during the 60

23   day deprivation of yard recreation privileges period.  (ECF Nos. 22 at 17, 36-3 at 3, 36-4 at 8.)

24       Defendant argues that courts finding long-term denial of outdoor exercise involved far

25   more severe conditions than plaintiff faced here.  (ECF No. 36-1 at 9.)  For example, in Spain, the

26   prisoners were held "in continuous segregation, spending virtually 24 hours every day in their

27   cells with only meager out-of-cell movements and corridor exercise," had "minimal" contact with

28   other persons, and were offered no "affirmative programs of training or rehabilitation."  Spain,

1    600 F.2d at 199.  By contrast, defendant contends plaintiff was not subjected to such extreme

2    social isolation and reduced environmental stimulation.  (ECF No. 36-1 at 9.)  Rather, defendant

3    contends plaintiff was housed in a low-security, dormitory-style unit in general population, with

4    "regular access to other recreational, vocational, and rehabilitative programs," was required to

5    leave his cell for his full-time job and an education program, for which he was enrolled and that

6    met five days a week.  (Id.)  Defendant calculates plaintiff would have been out of his cell at least

7    nine hours per day, not counting the time he could access the dayroom for recreational activities.

8    (Id. at 9-10.)

9         Since Spain, courts have "reaffirmed that the constitutionality of conditions for inmate

10    exercise must be evaluated based on *the full extent of the available recreational opportunities*."

11    Norbert, 10 F.4th at 930 (emphasis added).  Plaintiff did not rebut defendant's evidence that

12    plaintiff attended education classes from Monday to Friday, 3 p.m. to 5 p.m.  (ECF Nos. 36-2 at

13    4, 36-7.)  Rather, plaintiff objected that an education program cannot serve as a substitute for

14    physical exercise opportunities.  (ECF No. 40-2 at 8.)  However, access to education falls under

15    "affirmative programs of training or rehabilitation," one of the factors the court considered in

16    evaluating whether the deprivation in Spain violated the Eighth Amendment.  See Spain, 600 F.2d

17    at 199.  Moreover, plaintiff fails to explain how he was able to attend the exercise classes if he

18    was locked in his cell "throughout" the disciplinary period.

19         Plaintiff does not dispute that he was not held in administrative segregation, as were many

20    of the prisoners in the cases cited above.  See, e.g., Spain, 600 F.2d at 199.  Although plaintiff

21    denies he was housed in a dorm setting, he confirms he was housed in an 8-man cell, which

22    provided some contact with other prisoners, unlike prisoners who are housed in administrative

23    segregation with little or no contact with others.  See, id.  In addition, it is undisputed that

24    plaintiff was able to attend education classes.  Thus, plaintiff's contact with other persons was not

25    minimal, as it was in Spain.

26         Defendant adduced evidence that as of November 10, 2021, plaintiff was housed in

27    Security Level I, and assigned to Privilege Group A.  (ECF Nos. 36-2 at 3; 36-5 at 4.)  Defendant

28    contends that during the 60 day deprivation of yard recreation privileges, plaintiff's assignment to

Privilege Group A demonstrated that plaintiff retained access to telephone, visitation, packages, and access to the dayroom, and was also permitted to continue attending work and education assignments.  Cal. Code Regs. tit. 15, § 53130.6.2.  Plaintiff declares that he informed defendant at the disciplinary hearing that plaintiff remained housed in J-3 unit with severely overcrowded 8-man cells, and that the denial of exercise yard would completely deny plaintiff of any opportunity to exercise.  (ECF No. 22 at 13.)  In addition, plaintiff declares that throughout the disciplinary period he was housed in a secure Level II environment in J-Wing Cell 311, and at the time of the disciplinary hearing plaintiff had not been housed at the CMF-MSF minimum security Level I housing facility since June 21, 2021.  (ECF No. 40-1 at 2.)

The November 10, 2021 Classification Committee Chrono reflects plaintiff was classified as Security Level I and assigned "Housing Area/Bed: A W 2 - 215001L."  (ECF No. 36-5 at 4.)  However, plaintiff declares that he remained in J-wing cell 311 for the duration of the disciplinary period.  (ECF Nos. 22 at 10, 40-1 at 1.)  The triggering RVR reflects that on the date of the October 16, 2021 violation, plaintiff was housed in "CMF-A - A J 3 - 000311L."  (ECF No. 36-3 at 2.)  On November 13, 2021, the disciplinary hearing results show that plaintiff was housed in "CMF-A - A J 3 - 000311L."  (ECF No. 36-4 at 2.)  The December 26, 2021 RVR issued for plaintiff's failure to report for work also reflects that plaintiff was housed in "CMF-A - A J 3 - 000311L."  (ECF No. 36-6 at 4.)  Thus, the Court finds it undisputed that plaintiff was housed in J-wing cell 311 during the 60 day disciplinary period.

That said, plaintiff provided no evidence to show that his housing in Level II or in the J-wing cell 311 impacted his classification as Privilege Group A or required 24/7 confinement to his cell.  Indeed, it is undisputed that defendant did not order plaintiff confined to quarters, and it is undisputed that plaintiff was able to attend the education program which met every weekday for two hours each afternoon.  (ECF No. 36-2 at 4.)

Defendant also adduced evidence that plaintiff had a work assignment before, during and after the 60 day disciplinary period.  (ECF No. 36-6 at 2.)  Defendant declares that plaintiff was scheduled to work on Sundays, Mondays, Thursdays, Fridays, and Saturdays, from 3:15 a.m. to 10:45 a.m., but "records indicate that [plaintiff] was frequently absent from his work assignment

1    for unexcused reasons." (ECF No. 36-2 at 3.)  On December 26, 2021, plaintiff was issued a

2    RVR for failing to report to work for the months of October, November and December 2021.

3    (ECF No. 36-6 at 4.)  But defendant's documentary evidence shows that plaintiff did not work at

4    all during the 60 day disciplinary period.  (ECF No. 36-6 at 2, 4.)  Thus, it is unclear on what

5    basis defendant calculated plaintiff's out of cell time as nine hours per day.  The December 26,

6    2021 RVR does rebut plaintiff's claim that he could not work because of his housing in J-wing

7    cell 311; the RVR shows that plaintiff was expected to report to work, and suggests there may

8    have been other reasons for plaintiff's failure to report for work (referencing a medical disability).

9    (ECF No. 36-6 at 4.)   In addition, that the December RVR cites plaintiff's absence from work in

10   October 2021 shows that plaintiff was expected to report to work even before he was reclassified

11   as Security Level I on November 10, 2021.  But the evidence shows that plaintiff did not work

12   during the disciplinary period, and the reason why is disputed, so the Court does not consider his

13   working at his job in evaluating this claim.

14            Further, as to dayroom access, plaintiff declares that because he was not housed in the

15   CMF-MSF minimum security facility during the disciplinary period, he had "either very limited,

16   or no access at all to dayroom or telephones because" "those amenities were outside of the cell

17   [he] was locked inside of throughout the 60 day period." (ECF No. 40-1 at 2.)  But the dayroom

18   is always outside prison cells.  Importantly, as argued by defendant, plaintiff's statement does not

19   provide evidence quantifying what access to the dayroom plaintiff had.  Plaintiff provided no

20   evidence concerning the dayroom, or the facilities available within the dayroom.  The Ninth

21   Circuit has noted that where the dayroom was not designed for exercise and did not have

22   adequate space or appropriate equipment, the dayroom did not provide an exercise opportunity.

23   Pierce v. Cnty. of Orange, 526 F.3d 1190, 1212 and n.22 (9th Cir. 2008).  Therefore, such

24   evidence would be helpful for the Court to evaluate whether plaintiff had access to meaningful

25   recreational opportunities.

26            Viewing the evidence in the light most favorable to plaintiff as required, plaintiff has

27   demonstrated that there is a genuine dispute of material fact as to whether plaintiff had access to

28   meaningful recreation during the long-term deprivation.  See Norbert, 10 F.4th at 931 (the

1  availability of indoor exercise is relevant to determine whether the prison "is allowing for

2  constitutionally sufficient physical exercise.")  In his verified complaint, plaintiff claims that

3  "defendant knew that exercise yard is the only exercise opportunity available at CMF."  (ECF No.

4  1 at 2.)  Plaintiff's statement raises a reasonable inference that plaintiff's limited access to the

5  dayroom did not provide any exercise opportunity.  Plaintiff declares he had no access to exercise

6  opportunities during the 60 day disciplinary period, and that he informed defendant during the

7  disciplinary hearing that the 60 day deprivation of yard recreation access would deprive him of

8  any chance to exercise.  (ECF Nos. 22, 40-1.)  While defendant may be able to prove at trial that

9  plaintiff did have reasonable access to meaningful recreation opportunities during the 60 day

10  disciplinary period, the Court may not resolve this factual dispute on summary judgment.

11      B.  Subjective Element:  Deliberate Indifference

12      As set forth above, the deliberate indifference analysis involves a two-part inquiry into the

13  culpability of the defendant's state of mind.  The first question is whether defendant was

14  subjectively aware of the risk to plaintiff's health and safety, and the second is whether there was

15  a reasonable justification for the deprivation.  Thomas, 611 F.3d at 1150-51.

16      *1. Subjective Awareness*

17      In his declaration, defendant declares he was unaware of any risk to plaintiff's health or

18  safety that would be posed by the 60 day deprivation of outside yard access.  Defendant contends

19  his decision to impose the 60 day deprivation was reasonable because based on the information

20  available to him at the time of the hearing, defendant could not have subjectively known that the

21  temporary restriction on yard privileges would pose a serious risk of harm to plaintiff.  (ECF No.

22  41 at 4.)  On the other hand, plaintiff declares that he informed defendant at the disciplinary

23  hearing that the sanction would deprive plaintiff of all opportunity to exercise.  (ECF No. 22 at

24  13.)  In addition, plaintiff declares that at the disciplinary hearing, he reminded defendant that

25  both the Eighth Amendment and CDCR policy prohibited a 60 day deprivation of exercise, and

26  that "even the most severe punishments authorized by California law for a disciplinary infraction

27  mandate a minimum of five hours of exercise a week be offered to the prisoner," and referred

28  defendant to California Code of Regulations title 15, §§ 3331(h) and 3343(h).  (Id.)

It is undisputed that defendant knew the length of plaintiff's confinement without outdoor exercise.  Where a risk is obvious, subjective knowledge may be inferred.  Thomas, 611 F.3d at 1150 (citing Farmer, 511 U.S. at 842).  Indeed, "California strictly regulates this 'regular outdoor exercise,' ordinarily requiring prisons to provide inmates held in the general population with at least three hours of exercise per week and inmates held in segregation with at least one hour of exercise per day."  Id. at 1152.  The Ninth Circuit has consistently recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates."  Id. (quoting Spain, 600 F.2d at 199).

Defendant argues that plaintiff's evidence of the exercise requirement for prisoners assigned to Privilege Group C, § 3044, did not apply to plaintiff because he was assigned to Privilege Group A.  However, § 3044 demonstrates that the CDCR acknowledges the importance of "outdoor or covered/enclosed setting each week," and specifically states that "[d]ayroom access shall not be counted towards the ten hours of exercise," even for prisoners deemed to be program failures.  (ECF No. 22 at 22.)  In addition, § 3322(c) states that prisoners shall not be "deprived of exercise as a disciplinary disposition longer than ten days. . . ."  Cal. Code Regs. tit. 15 § 3322(c) (noting some exceptions).  The fact that California regulates the provision of outside exercise supports an inference that defendant was aware of the importance of outside exercise. The Court finds that defendant's claimed lack of knowledge does not support summary judgment.

### 2. Justification for the Deprivation

As for whether there was a reasonable justification for the deprivation, the Court finds there are genuine disputes of material fact precluding entry of summary judgment for defendant on this question.

The right to outdoor exercise may be restricted for security and disciplinary reasons.  See Norwood v. Vance, 591 F.3d at 1070 (defendants were entitled to qualified immunity on Eighth Amendment claim challenging restrictions on outdoor exercise during prison lockdowns); LeMaire, 12 F.3d at 1448-49, 1458 (when prisoner with long history of assaults on correctional officers twice attacked officers when exiting exercise cubicle and "vowed to repeat" assaults, restriction on outdoor exercise did not violate Eighth Amendment).

Defendant maintains that the imposition of the 60 day deprivation was reasonable because the violation was serious, and the penalty complied with the applicable prison regulations.  (ECF No. 36-2 at 3 (citing Cal. Code Regs. tit. 15, § 3315(f)(5)(B)).)  Defendant contends the deprivation was "justified by several subdivisions of section 3315, including but not limited to: subdivisions (a)(2)(B) (hazard to facility security); (a)(2)(C) (disruption of facility operations); and (a)(3)(M) (repeated pattern of rule violations for the same offense)."  (ECF No. 36-2 at 2.)  In addition, defendant declares that "[w]hile housed at CMF, [plaintiff] had been previously counseled on his failure to follow departmental policies on preventing the spread of the virus."  (Id.)  Further, defendant argues the deprivation was reasonable because the deprivation of yard recreation privileges did not preclude plaintiff from working, attending classes, and accessing the dayroom, as well as other privileges.  (Id.)

On the other hand, plaintiff describes the decision as a "disciplinary infraction" (ECF No. 22 at 13), and denies he has ever been counseled at CMF regarding COVID-19 protocols (ECF No. 40-1 at 1-2).  Plaintiff declares that he informed defendant at the time of the hearing that plaintiff was housed in the J-unit and that the imposition of the 60 day deprivation would deprive plaintiff of all access to physical exercise.  In addition, plaintiff informed defendant that such a lengthy deprivation violated both prison policy and the Eighth Amendment.[3]

Section 3315(f)(5)(B) provides for the suspension of privileges on a sliding scale for repeated serious rules violations:  sixty days for the second offense, and ninety days for the third offense.  Cal. Code Regs. tit. 15, § 3315(f)(5)(B).  But on the other hand, § 3322(c) states that:

> No incarcerated person shall be confined to quarters or otherwise deprived of exercise as a disciplinary disposition longer than ten days unless, in the opinion of the institution head, the incarcerated person

_____

[3]  Defendant declares he does not recall having a conversation with plaintiff during the November 13, 2021 hearing regarding plaintiff's constitutional right to exercise or his prior monetary settlement with CDCR, and defendant does not specifically address or deny plaintiff's claim that he referred defendant to §§ 3331(h) and 3343(h) and showed defendant "that even the most severe punishments authorized by California law for a disciplinary infraction mandate a minimum of five hours of exercise a week be offered to the prisoner."  (ECF No. 22 at 13.)  Defendant provided a more complete copy of the disciplinary hearing results than plaintiff, but did not provide plaintiff's "written statement" that was purportedly attached to the results.  (ECF No. 36-4 at 7.)

16

1

> poses such an extreme management problem or threat to the safety
> of others that longer confinement is necessary. The director's written
> approval is required for such extended confinement.

2

3

4    Cal. Code Regs, tit. 15, § 3322(c). It is unclear whether the director approved plaintiff's extended

5    confinement of 60 days. This regulation shows that the CDCR recognizes the importance of

6    exercise.

7            The disciplinary hearing results show that plaintiff's offense was categorized as serious,

8    and noted the offense occurrence was "3rd (or more)." (ECF No. 22 at 16.) But the triggering

9    RVR found plaintiff guilty of disobeying an order (a violation of § 3005(b)), and the disciplinary

10   hearing results form does not identify the nature of the prior three offenses noted. (Id.) Even

11   assuming the three prior offenses were for disobeying an order, defendant's declaration does not

12   confirm that the prior three offenses for disobeying an order were based on plaintiff's violation of

13   COVID protocol. Rather, defendant declares plaintiff was previously counseled on his failure to

14   follow departmental policies on preventing the spread of the virus. (ECF No. 36-2 at 2.) Plaintiff

15   declares that he was never counseled at CMF on COVID-19 protocols. (ECF No. 40-1 at 1.)

16   Defendant did not provide a copy of the counseling chrono or any prior RVR to rebut plaintiff's

17   denial.

18           While outdoor exercise privileges may be restricted for disciplinary or security purposes,

19   generally such long-term deprivation is based on serious security risks. See Lemaire, 12 F.3d at

20   1458 (upholding long-term denial of outdoor exercise to prisoner, who attacked officers as he

21   exited exercise cubicle (and vowed to repeat), posing a grave security risk when outside his cell

22   and could exercise in his cell); Allen, 48 F.3d at 1087-88 (confinement for six weeks with only 45

23   minutes per week of outdoor exercise, based on "multiple disciplinary offenses," prisoner was not

24   denied yard on the basis of a finding that he posed a grave security risk outside his cell).

25   Here, plaintiff received the RVR for removing his mask and hugging and kissing his visitor for a

26   prolonged period of time, despite a direct order to follow COVID-19 protection protocols during

27   visiting hours. (ECF No. 36-2 at 2.) There is no evidence that plaintiff committed assaults,

28   engaged in any violent behavior, or posed a "grave security risk" outside his cell. Indeed,

1    defendant characterizes the conduct as "potentially dangerous."  (ECF No. 36-1 at 10.)  While

2    plaintiff's behavior warranted the issuance of an RVR, the Court finds there is a genuine dispute

3    of material fact as to whether the triggering RVR, even though defendant classified it as

4    "serious," constitutes an offense serious enough to warrant the imposition of the long-term

5    deprivation of <u>all</u> outdoor exercise.  Notably, even given the prisoner's multiple disciplinary

6    offenses in <u>Allen</u>, the prisoner was allowed 45 minutes per week of outdoor exercise.  <u>Allen</u>, 48

7    F.3d at 1086.

8         In contrast, when plaintiff received a serious RVR (not COVID related) at CSP-Solano,

9    plaintiff was only denied <u>daytime</u> yard privileges and claimed he received 2 hours and 16 minutes

10   of outdoor exercise per week (in the evening) during the 90 day disciplinary period.  <u>Witkin v.</u>

11   <u>Wise</u>, 2022 WL 379310, at *16 (E.D. Cal. Feb. 8, 2022), <u>findings and recommendation adopted</u>,

12   2022 WL 16552661 (E.D. Cal. Oct. 31, 2022), <u>aff'd</u>, 2025 WL 636316 (9th Cir. 2025).  In <u>Witkin</u>

13   <u>v. Wise</u>, the defendants adduced evidence that plaintiff worked as a porter from 2:00 p.m. to 9:00

14   p.m., and was permitted to use showers, use the phone, and access the dayroom for watching tv or

15   other activities.  <u>Witkin v. Wise</u>, 2022 WL 379310, at *14 n.8.  On appeal, the Ninth Circuit

16   affirmed the grant of summary judgment to defendants on plaintiff's Eighth Amendment claim,

17   and noted that "[b]ecause Witkin received access to some outdoor exercise time (at least two

18   hours per week) during the 90-day disciplinary period, as well as access to other forms of

19   recreation including the dayroom, there was no constitutional violation and the officer was

20   entitled to qualified immunity."  <u>Witkin v. Wise</u>, 2025 WL 636316, at *1.  It appears the hearing

21   officer in <u>Witkin v. Wise</u> was aware that some outdoor exercise was important.  Here, it is

22   undisputed that plaintiff was not permitted <u>any</u> outdoor exercise for the 60 day disciplinary

23   period, and plaintiff declares he was "completely deprived of any opportunity to exercise."  (ECF

24   No. 22 at 13.)  In addition, plaintiff declares he had "very limited, or no access at all to dayroom"

25   throughout the disciplinary period.  (ECF No. 40-1 at 2.)

26        Overall, the Court finds that defendant was subjectively aware of the risk to plaintiff's

27   health and safety because the 60-day deprivation was long-term, raising an inference that the risk

28   was obvious.  In addition, plaintiff has raised genuine disputes of material fact as to whether

1    plaintiff had access to meaningful recreation during the long-term deprivation, and whether

2    defendant's  imposition of the long-term deprivation was reasonable.  Consequently, the Court

3    recommends that defendant's motion for summary judgment be denied.

4    IX.    QUALIFIED IMMUNITY

5         A.  Legal Standards

6         "The doctrine of qualified immunity protects government officials 'from liability for civil

7    damages insofar as their conduct does not violate clearly established statutory or constitutional

8    rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223,

9    231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity

10   shields an officer from liability even if his or her action resulted from "'a mistake of law, a

11   mistake of fact, or a mistake based on mixed questions of law and fact.'"  Id. (quoting Groh v.

12   Ramirez, 540 U.S. 551, 567 (2004)).

13        "Determining whether officials are owed qualified immunity involves two inquiries:

14   (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged

15   show the official's conduct violated a constitutional right; and (2) if so, whether the right was

16   clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817,

17   821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.

18   Callahan, 555 U.S. 223, 236 (2009) (the two factors set out in Saucier need not be considered in

19   sequence.)).  A right is "clearly established" when, "at the time of the challenged conduct, the

20   contours of a right are sufficiently clear that every reasonable official would have understood that

21   what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting

22   Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

23        B.  Discussion

24        Defendant seeks summary judgment on grounds of qualified immunity, arguing he did not

25   violate plaintiff's Eighth Amendment rights.  (ECF No. 36-1 at 12.)  But even assuming the Court

26   found defendant violated plaintiff's Eighth Amendment rights, defendant contends that he is

27   entitled to qualified immunity because there is no "per se requirement of outdoor exercise," and

28   although the lack of outdoor exercise in extreme and prolonged situations may violate the

Constitution, "there is no controlling precedent disallowing a temporary restriction on yard privileges where the inmate lived in an open dormitory, worked at his job, attended education classes, and had access to other recreational activities." (Id. (citing Spain, 600 F.2d at 199-200).) Thus, defendant concludes, a reasonable officer in defendant's position could have believed that the sanctions imposed, which were within the range of sanctions available under prison regulations and comported with his discretionary authority, were lawful and did not violate a clearly established constitutional right. (Id.)

As discussed above, the Court found that taking the facts in the light most favorable to plaintiff, there are genuine disputes of material fact concerning the conditions of confinement during the disciplinary period, as well as whether the justification for the long-term deprivation of yard recreation privileges was reasonable, and such disputes of material fact preclude summary judgment. Although defendant relies on the lack of case law as articulated by him, his arguments are based on factual disputes concerning the reasonableness of defendant's actions. In other words, for the Court to grant defendant qualified immunity, the Court would have to accept defendant's version of the facts and find that defendant acted reasonably in imposing the long-term deprivation of yard recreation privileges and was not deliberately indifferent in doing so. However, as discussed above, plaintiff raised genuine issues of material fact as to whether defendant was deliberately indifferent and acted reasonably in imposing the 60 day deprivation of recreation yard privileges. Under either prong of the qualified immunity analysis, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." See Tolan v. Cotton, 572 U.S. 650, 656 (2014) (citations omitted). The material factual disputes that preclude summary judgment also preclude granting defendant qualified immunity on summary judgment. See LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000) ("The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed"); Fratus v. Dayson, 2025 WL 637066, at *6 (E.D. Cal. Feb. 27, 2025), findings and recommendation adopted, 2025 WL 950323 (E.D. Cal. Mar. 28, 2025) (denying qualified immunity on Eighth Amendment outdoor exercise claim because defendants' arguments "rest on

1   factual disputes regarding the reasonableness of their actions."); Heilman v. Thumser, 2014 WL

2   6886016, at *10 (E.D. Cal. Dec. 4, 2014), findings and recommendation adopted, 2015 WL

3   367461 (E.D. Cal. Jan. 27, 2015) (denying qualified immunity on an Eighth Amendment outdoor

4   exercise claim where defendants' argument "rests on their dispute of plaintiff's factual claims, not

5   the status of the law as to the conduct alleged").  Consequently, the Court recommends that

6   defendant's motion for summary judgment on the grounds of qualified immunity be denied.

7   X.     CONCLUSION

8          Accordingly, IT IS HEREBY RECOMMENDED that:

9          1.  Plaintiff's motion for summary judgment (ECF No. 22) be denied; and

10         2.  Defendant's motion for summary judgment (ECF No. 36) be denied.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16  objections shall be filed and served within fourteen days after service of the objections.  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19

20  Dated:  July 24, 2025

21  _____

22  CHI SOO KIM
    UNITED STATES MAGISTRATE JUDGE

23  /1/witk1211.xmsj

24

25

26

27

28

                                        21