UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MICHAEL WITKIN,<br><br>           Plaintiff,<br><br>     v.<br><br>PITTSLEY,<br><br>           Defendant. | No. 2:22-cv-1211 WBS CSK P<br><br>MEMORANDUM AND ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Michael Witkin is a former state prisoner proceeding pro se in this action brought under 42 U.S.C. § 1983. Defendant M. Pittsley is a correctional lieutenant at the California Medical Facility, who served as the senior hearing officer in a disciplinary hearing at which plaintiff was found guilty of disobeying an officer's order to follow COVID-19 protection policies during visiting hours. As part of his disciplinary decision, Lt. Pittsley assessed a sixty-day suspension on plaintiff's recreational yard privileges.

1

1    Plaintiff argues that such action violated his rights under the
2    Eighth Amendment to the United States Constitution to be free
3    from cruel and unusual punishment.  (See Docket No. 42.)
4         The matter was referred to a United States magistrate
5    judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.
6    Both sides filed motions for summary judgment, and on July 25,
7    2025, the magistrate judge filed findings and recommendations
8    herein, recommending that both plaintiff's and defendant's
9    motions be denied (Docket No. 24).  The findings and
10   recommendations were served on all parties and contained notice
11   to all parties that any objections to the findings and
12   recommendations were to be filed within fourteen days.  Defendant
13   filed objections, and on September 15, 2025, plaintiff filed a
14   late reply.[1]
15        In accordance with the provisions of 28 U.S.C. §
16   636(b)(1)(C) and Local Rule 304, this court has conducted a de
17   novo review of this case, and for the following reasons declines
18   to follow the full recommendation of the magistrate judge.
19        The magistrate judge recommends denying defendant's
20   motion for summary judgment on the grounds that plaintiff had
21   raised genuine disputes of material fact as to both whether his
22   conditions of confinement violated the Eighth Amendment and
23   whether defendant was entitled to qualified immunity.  (See
24   Docket No. 42.)

---

[1] Plaintiff contends that defendant failed to serve plaintiff with a copy of defendant's objections.  (ECF No. 46 at 1.)  However, defendant's objections are accompanied by a certificate of service attesting to service by mail on plaintiff's address of record.  (ECF No. 45 at 10.)

2

However, the Supreme Court has instructed that a court may assume without deciding the existence of a constitutional violation for the purposes of determining whether the official who committed the alleged violation was entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). Pursuant to that guidance, this court elects not to first answer the question of whether defendant's conduct which is the subject of this action violated plaintiff's constitutional rights. Instead, the court proceeds first to address the question of whether, construing the facts in the light most favorable to plaintiff, defendant is entitled to qualified immunity.

I.  Legal Standard

In § 1983 actions, "[q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Pearson, 555 U.S. at 231 (2009) (citation modified). "The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful." McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000).

"Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" LSO, Ltd. v. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000). "If plaintiff

1  carries this burden, then the officer[] must prove that [his]
2  conduct was reasonable even though it might have violated
3  constitutional standards." Romero v. Kitsap Cnty., 931 F.2d 624,
4  627 (9th Cir. 1991).
5       A.   Determining What Constitutes Clearly Established Law
6            Whether the unlawfulness of the conduct at issue is
7  clearly established "depends largely upon the level of generality
8  at which the relevant 'legal rule' is to be identified." Wilson
9  v. Layne, 526 U.S. 603, 614 (1999). The Supreme Court's "cases
10 [have] establish[ed] that the right the official is alleged to
11 have violated must have been 'clearly established' in a more
12 particularized, and hence more relevant, sense: The contours of
13 the right must be sufficiently clear that a reasonable official
14 would understand that what he is doing violates that right."
15 Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Vos v.
16 City of Newport Beach, 892 F.2d 1024, 1035 (9th Cir. 2018) ("The
17 Supreme Court has repeatedly admonished courts not to define
18 clearly established law at a high level of generality."
19 (quotations omitted)).
20           "This is not to say that an official action is
21 protected by qualified immunity unless the very action in
22 question has previously been held unlawful, but it is to say that
23 in light of pre-existing law the unlawfulness must be apparent."
24 Anderson, 483 U.S. at 640 (citation omitted). In other words,
25 "[f]or a right to be clearly established, case law must
26 ordinarily have been earlier developed in such a concrete and
27 factually defined context to make it obvious to all reasonable
28 government actors, in the defendant's place, that what he is

doing violates federal law." Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1117 (9th Cir. 2017); see also Reichle v. Howards, 566 U.S. 658, 664 (2012) (for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate.").

"Although the Supreme Court has provided little guidance as to where courts should look to determine whether a particular right was clearly established at the time of the injury," courts "in the Ninth Circuit begin [their] inquiry by looking to binding precedent." Hopkins v. Bonvicino, 573 F.3d 752, 772 (9th Cir. 2009) (citation modified). "If the right is clearly established by decisional authority of the Supreme Court or this Circuit, [the] inquiry should come to an end." Id.

B.  Clearly Established Law Regarding Outdoor Exercise

While the Ninth Circuit has decried the deprivation of outdoor exercise in various instances, it has never held that the lack of outdoor exercise for prisoners per se constitutes an Eighth Amendment violation. Although it has held that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of . . . inmates," Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979), it has not clearly established that the deprivation of outdoor exercise for a temporary period, offset in part by the maintenance of other privileges, violates the Eighth Amendment.

In Spain, the Ninth Circuit found that denying inmates outdoor exercise privileges constituted an Eighth Amendment violation only when viewed in conjunction with "[s]everal [other] factors":  the inmates were in "continuous segregation, spending

5

virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise," had "minimal" contact with "other persons," and lived in "an atmosphere of fear and apprehension." Id.

In the years following Spain, in dealing with the deprivation of outdoor exercise, the Ninth Circuit has required a showing of harsh conditions beyond simply being deprived of outdoor exercise in order to constitute an Eighth Amendment violation. For example, in Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998), the court emphasized that the inmates were "confined to continuous and long-term segregation." Also, in Thomas v. Ponder, 611 F.3d 1144, 1146, 1152-53 (9th Cir. 2010) the inmate was not just deprived of outdoor exercise but was confined to the maximum security housing unit. See also Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994) (prison official not entitled to qualified immunity when prisoner was largely deprived of outdoor exercise for six weeks while being "indefinite[ly]" housed in special holding unit "under admittedly 'harsh' conditions").

The court sees nothing per se cruel or unusual in requiring prisoners to exercise indoors rather than out-of-doors. Indeed, weather and air quality are often better indoors, and many people, even those who are not incarcerated, choose to exercise indoors. For that reason, the Ninth Circuit has repeatedly held that prison officials who suspended outdoor exercise privileges during outbreaks of prison violence or to mitigate violent prisoners were either entitled to qualified

6

immunity or did not violate the Eighth Amendment. See, e.g., Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (prison officials who denied inmate outdoor exercise privileges during period of prison violence entitled to qualified immunity); LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993) (no Eighth Amendment violation when inmate was deprived of outdoor exercise privileges for approximately five years because of violent disciplinary infractions); Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (no Eighth Amendment violation where prison officials instituted month-long deprivation of outdoor exercise privileges during prison lockdown), cert. denied, 451 U.S. 937 (1981); Corona v. Knowles, 687 F.App'x 602, 603 (9th Cir. 2017) (prison warden who deprived inmate of outdoor exercise for approximately five months in response to violent attack on prison officials entitled to qualified immunity at summary judgment).

But the Ninth Circuit has yet to determine the circumstances under which a temporary deprivation of outdoor exercise for an inmate not subject to "continuous and long-term segregation," Keenan, 83 F.3d at 1089, or otherwise "harsh conditions," Allen, 48 F.3d at 1088, rises to the level of an Eighth Amendment violation. Cf. Rhoden v. Mayberg, No. 1:07-cv-01151 BLW LMB, 2011 WL 219992, at *3 (E.D. Cal. Jan. 21, 2011) ("No clearly established law exists governing what combination of indoor and outdoor exercise is appropriate for inmates . . . where 'harsh' living conditions are not at issue, but where facility staff must take into consideration the possible health risks attendant with high summer temperatures."), aff'd, 473 F.App'x 737 (9th Cir. 2012).

Indeed, the Ninth Circuit has suggested that outdoor exercise may not be required at all so long as "otherwise meaningful recreation" is provided to inmates. Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018); see also Norbert, 10 F.4th at 929 ("[W]e have not imposed a rigid requirement of outdoor exercise regardless of the other opportunities for physical exercise that a correctional institution affords."). Thus, no clearly established law exists regarding whether, and how much, outdoor exercise is required for inmates not subject to harsh conditions.

II. Conclusion

It is important not to forget that the events giving rise to this lawsuit occurred during the height of the Covid-19 pandemic, during which Covid-19 was a "quickly evolving area of science . . . about which scientific conclusions have been hotly contested." Høeg v. Newsom, 652 F. Supp. 3d 1172, 1188 (E.D. Cal. 2023). At the time, "COVID-19 [wa]s a novel, highly infectious virus that . . . resulted in lockdowns of entire countries around the globe to stop the spread of the virus." Torres v. Milusnic, 472 F. Supp. 3d 713, 727 (C.D. Cal. 2020). Even in noncustodial settings, quarantines, masking, and social distancing were the order of the day.

"The novel nature of COVID-19 and the atmosphere of confusion concerning the proper methods of addressing it are particularly salient here given that the events alleged in the complaint occurred in" 2021, approximately one year "into the pandemic." Cox v. Bal, No. 2:22-cv-00804 WBS EFB, 2024 WL 4977193, at *2 (E.D. Cal. Dec. 4, 2024). "With this context in

mind, it is clear that . . . prison officials were trying to do the best they could in unprecedented circumstances," id., by penalizing an inmate for breaching the very safety protocols designed to curb the spread of the pandemic.

Viewing the evidence in the light most favorable to plaintiff, the court finds that plaintiff's conditions of confinement fall short of the extreme circumstances in Spain and its progeny. Because plaintiff has failed to show the existence of clearly established law regarding when a temporary deprivation of outdoor exercise for inmates not subject to harsh conditions constitutes an Eighth Amendment violation, defendant is entitled to qualified immunity.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Given the circumstances of this case, this court cannot conclude that Lt. Pittsley was plainly incompetent or knowingly violated the law. Accordingly, because the court finds that defendant is entitled to qualified immunity, it does not reach the question of whether defendant's conduct in fact violated plaintiff's Eighth Amendment rights.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Docket No. 22) be, and the same hereby is DENIED;

AND IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket No. 36) be, and the same hereby is, GRANTED on the ground of qualified immunity.

Dated: September 30, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE